The fifth case for argument is 24-3412 from the District of Minnesota, Nyra Miller-Fields v. Ryan Londregan, consolidated with 25-1170 from the District of Minnesota, Nyra Miller-Fields v. Brett Seide. All right. Ms. Wilbanks, we'll hear from you first. Good morning. May it please the Court. I first want to thank the Court very briefly for understanding my travel issues. I can't control the weather. I tried the best to get ahead of it as I could, but wasn't able to. And I also want to thank the Court staff for all their assistance. And thank you for hearing from us today. My name is Amy Wilbanks, and I'm here on behalf of the appellant, Nyra Jean Miller-Fields. She's the personal representative of the estate of her son, Ricky Cobb II. This appeal turns solely on the basic, most fundamental procedural rule at the start of litigation, one that rarely allows us to get to a dispositive result at the pleading stage of litigation. That is not to say by any means that this case is simple, but we build these rules on rock and not sand. They're steadfast, and they control how litigation begins. District Court essentially disposed of this case as if it were hearing a summary judgment motion rather than looking to see if the pleadings were sufficient to go forward on the 12th v. 6 motion. The District Court looked at the perspectives of the officers about the video. They resolved factual disputes in favor of the officers. And that's not the proper standard under Rule 12 v. 6. All allegations of the complaint must be taken as true under Volkay v. Roy and Dabb v. Anoka County. Are you complaining about the consideration of the video at all? No, Your Honor. We actually told the District Court that we would not dream of telling her she couldn't view the video. I thought so. I thought that was more or less waived. Importantly, Your Honor... Well, then what's the problem procedurally if you agreed to consideration of the video? There are two issues with the way that the video was considered and the fact that it was considered at all. Number one, it was a procedural irregularity in that they subpoenaed the materials, including the video, before a 26F conference had occurred. Discovery had not begun yet. But they availed themselves of discovery in this case in order to get the full versions of the video, put them in front of the Court. But you more or less waived that argument by saying the Court could consider it, right? Not specifically, Your Honor. Under Scott v. Harris, the video that they put forward only... I mean, I think what you're really arguing is the interpretation of the video. The Court made inferences against your client based on the interpretation. I think that's what you're really... That's correct because the video did not blatantly contradict the complaint. That's the standard under Scott v. Harris. We used a piece of video that was publicly available to us at that time so that we could lay out very detailed facts about what happened in this case. We still saw a constitutional violation. We saw questionable probable cause. I thought the judge thought the video did contradict some of the allegations in the complaint, blatantly. I'm not sure in what respect. Essentially what the judge decided as to whether there was an immediate threat of harm because that's really what we're getting to. Also whether the vehicle was moving forward at the time of the shots, whether it had been placed in drive and so forth. Correct. Whether that was an immediate threat to the officers. So there are some factual... That's a legal question, isn't it? This is entirely based on a legal question. However, where there is factual dispute about whether there was an immediate threat of harm to the officers from what was occurring with the car on the scene, whether they had any reason to think that he was dangerous or an immediate threat of harm, that's a factual dispute. The fact that that is a factual dispute makes disposition on competing interpretations of Now, if we're allowed to go forward with discovery, and I will submit to you that that discovery can be very limited and very targeted in this matter, but importantly with respect to the video, we had not seen all of the video that they had at their disposal. In fact, it was argued below that the videos that they all had were not synced up. They actually had to hire an expert who we have not yet had identified to us to put those videos together to present their version of the facts. Well, surely you were given access to all the videos that the district court considered. I'm not sure that we were. The judge, the magistrate judge, actually set aside their subpoena and said, we're not going forward with discovery. You haven't had a 26F conference, and therefore your subpoena was, you know, not sufficient. We didn't get into a protective order of confidentiality with it. So how did the judge get the videos? They submitted the videos, regardless. Did they send you a copy? Yes, Your Honor. I believe that they did. Okay. So you've seen everything the judge saw? Yes, I have, Your Honor. And I argued before the judge below as to both issues in this case, one probable cause as to defendant's identity, one as to the excessive force. Why do you say whether there was an immediate threat is a factual question that requires further proceedings? Why isn't it a legal question whether the use of force was reasonable in light of the pleaded facts and those on the video? Go ahead. Yes, Your Honor. Under Tennessee v. Garner, that's the threshold question, is whether there was an immediate threat of harm by Cobb towards the officers or towards anyone else. We were talking about that before the judge below, that there were, you know, whether anybody was in the way of the car, whether there was really any danger to anyone, and most importantly, whether the car was actually moving at the time. Do you argue that's disputed? I do, Your Honor. And in fact, it was conceded below that Mr. Cobb put his foot on the brake and stopped the movement of the car just at the moment that Mr. Trooper Londrigan pointed his weapon, said, get out of the car, and immediately, within a fraction of a second, fired his weapon. And those allegations are in the complaint. And so any allegation Which allegations are in the complaint? The car had started to move forward and then the plaintiff or the decedent braked? That's in the complaint? Yes, Your Honor. That is paragraph 28. At the video, it's time stamp 2-16-59 and goes to 2-17-03. Cobb placed his foot on the brake, moved his hand to the transmission shift, and we allege in the complaint that it was because he was startled because people were trying to enter the car and they were grabbing at him. He then placed his foot on the brake and stopped the movement of the vehicle. That was conceded below by the troopers, that he actually stopped the vehicle. Then in the complaint And I think the video shows that. But doesn't the video show that the car started moving again before the shots? It does. And per the complaint, the allegations that we pled, his foot came off the brake because Trooper Seide had grabbed him and caused his foot to come off the brake. Okay. But does the reason really matter as to what a reasonable officer might perceive as a level of danger there? I think it absolutely does matter what they perceived. But we're at a point where we have not yet discovered what they perceived. We can't use the arguments of their counsel when we haven't entered discovery. But it's not a subjective test. It's an objective test, right? What they actually perceived really doesn't matter. It's what a reasonable officer would have perceived. I think that that's fair, except to the extent that there is a certain subjective component to it, whether there is an impermissible intent. And we don't know that until we talk to the officers and get their testimony on that. Their testimony on what now? On what they subjectively perceived? Correct, Your Honor, what they believed. I mean, our issue with this situation is that in order to get the district court on board with their interpretation of the video, they used arguments of counsel. We don't have testimony from the troopers themselves. We would like to have that testimony from them as part of discovery. Between that and making sure we have the timeline, which this is a very tight timeline, as you know, when we pled in the complaint, this happens in a matter of seconds. But importantly, on the timeline, the shot was fired within tenths of a second. And, you know, that contradiction, if it, you know, if their interpretation contradicts the facts of the complaint, that means it's an issue that's ripe for discovery. We do the discovery. We go to summary judgment and talk about qualified immunity again at that point. But it's not appropriate at the pleading stage to say, I accept your interpretation that your counsel has told me over what the plaintiff has pled, because the complaint sort of is the master in this. We're testing the complaint. You know, interestingly, nobody ever really attacked what the complaint said or whether there were any deficiencies in how we pled this. All they argued is that their interpretation of what the video shows is different. That creates a question of fact, which means that a case cannot be disposed of under Rule 12b-6 on that basis. If the court applies the standard Rule 12b-6 framework, there are three conclusions that follow. And I want to get a little more into the probable cause issue very briefly. We argued below, and it is alleged in the complaint, that we're not really positive whether they had arguable probable cause or not because of the length of time that they took to figure it out. You know, and we hear their conversation in the video. We hear them saying, he's going to be suspicious. This is taking a long time. I don't think we should use force. I don't think we can arrest him. We've got to talk to Ramsey County. There's a phone call with Ramsey County where another person unknown to all of us, unidentified to us at this point, speaks for 48 seconds to Trooper Seide. At the end of the call, Trooper Seide says, well, we're going to go ahead and get him arrested. To us, that's equivocal. We're not positive that the person from Ramsey County said, we want him arrested, we want you to arrest him. We have no idea whether that's a fact or not until we do discovery. What we allege is that the potential was that at midnight, this order that he had violated, and in what way, we don't know, right? We don't know if he was a danger or not, but he had allegedly violated this order that it had expired at midnight and they had no reason to think at a little after 2 a.m. in the morning that it was still a valid warrant and not stale. That issue is something that we need to determine in discovery. If Ramsey County did say, go ahead and arrest him on this OFP violation, would that be arguable probable cause? I would say so, Your Honor. I think that matters and that's just what we need to find out. Unfortunately, we can't dispose of the case until we do know that. Your hypothesis is that Ramsey County might have told the deputy that the order expired at midnight? That is one of the possibilities, yes. If they had said to Seide, whether it's those facts, whether it is, okay, it already expired, but we still want you to bring him in, his reliance on that and the reasonability of it becomes, you know, maybe another fact question as well. But they also could have told Seide that, you know, this has expired. We don't think you can bring him in. It's probably not good anymore, but that trooper Seide wanted to go ahead and do the arrest. We have made no allegation that that's actually the case. The only argument that we have made is we don't know yet because we don't know who was on the other end of the phone, what was said to trooper Seide. We haven't had an opportunity to ask trooper Seide that or to talk to the Ramsey County official that was on the other side of the phone. Seeing I've only got about a minute and a half, I'm going to very quickly close. The Rule 12b6 stage, the Court's task is not to determine whose interpretation of the facts is correct at this point. We need a little bit of discovery. Once discovery is done, it might bear out that the trooper's version of the facts is correct, and at that point, summary judgment would be appropriate. But until we know that, you know, this is not the proper time to dismiss the complaint. Thank you. Very well. Thank you for your argument. Mr. Madl, we'll hear from you. May it please the Court, Counsel, it's my honor to represent Trooper Ryan Lonergan, who's in the courtroom today, as well as Trooper Seide. First, with respect to the videos, we actually told the appellant, we want to give you all these videos. They said no, we ignored them. We just gave them all the videos. So they had everything before we argued this motion to dismiss. That's number one. Second, with respect to this idea of blatant contradiction, there have been multiple today. Trooper Lonergan, if you can see from the videos, arrives on the scene at 2-11-45. At 2-14-45, according to Trooper Seide's body-worn camera, he said to Ramsey County, I'll go arrest him and then I'll bring him to Ramsey County Jail. Trooper Erickson, who is the third trooper there, said, arrest him. Trooper Lonergan then said, yeah. Before that, Trooper Seide told Trooper Lonergan, he's amped, he's sketchy, he's edgy, and this is the guy that we want for felony OFP, order for protection. Then they approached the car at 2-15-50. Fifteen times, fifteen times Trooper Seide tells Mr. Cobb to either get out of the car or give him his keys. He doesn't do that. So, at 2-16-58, Trooper Lonergan unlocks the car. At this time, this is when, at 2-16-58, immediately when those cars are, the dome light comes on in the car and the car is unlocked, that's when the brake lights illuminate. He's putting the car into gear. The black, we see a black SUV once lane over. Cobb then puts the car into gear at 2-16-59. Seide opens his door at 2-17-00. Lonergan grips his holstered gun at the exact same second. Another white car comes one lane over. Lonergan now sees Seide at this point one-half to two-thirds within that car. He sees him. You can see this on his body-worn camera. Lonergan begins to draw his gun. Then the car stops abruptly. Seide, at this point, is two-thirds in the car. Seide said, get out of the, and then Lonergan screams at 2-17-03, get out of the car now. At that moment, the car lurches forward. Seide, again, he's trying to get that seatbelt off of Cobb so he can effectuate an arrest. The car is going forward. Cobb's right hand then moves up off of the gear shift and towards Officer Lonergan. At 2-17-05, two gunshots. Officer Lonergan, two perfectly placed gunshots in Cobb. The car then goes off. What was your point about blatant contradiction? Just getting to that. All right, okay. One of the things that we are hearing below is that, well, they were running alongside of the car. They weren't even dragged. Well, the contradiction has to be of the complaint, as I infer. I mean, Scott v. Harris is a summary judgment case. You're trying to say that a district court can use a video on a motion to dismiss that blatantly contradicts the complaint? Is that the point? Not only that, but it's also your court's precedent holds that as long as they're embraced by the pleadings, you can use that evidence, just like you can a contract, just like you can any other document. It wasn't for a video to be embraced by a pleading. If the evidence here is showing this contradiction of not only what's in the complaint, but also, frankly, what they're arguing right now, because that's one of the things that we keep finding here of shifting sands about what is being said in the video, what was said below. What you just heard below is that they were here. They're not even being dragged. Trooper Seide, immediately after the shots were fired, you can see him being dragged, and he then said on video, without the benefit of a lawyer, without the benefit of running this by anybody, I just got fucking dragged. This is what's happening over and over here. And this, we're talking here, Lonergan arrived at 2-11-45. The shots were fired at 2-17-05. What about the argument that we don't know? We only have half of that conversation about the warrant from Ramsey County and whether or not that request was made or maybe something along the lines of it's expired, but bring him in anyway. And why isn't that relevant to the legal question of arguable probable cause? With respect to my client, he can rely upon another officer. So he was not part of that. So that's Officer Seide's, maybe a question better put. Yes. Okay. But with respect to Officer Seide, and so let me jump with respect to help my counsel here. I just webbed you. He's on body-worn camera saying back to Ramsey County, I will go and arrest him. So is the theory here that he was on the phone and either faking it or not doing anything with respect to Ramsey County, is that how far that we're going to go with this? I think the suggestion was, hey, the warrant's stale, but bring him in anyway. And then an agreement to do that is a plausible explanation. The first thing that he said, Officer Lonergan, this is the guy that's wanted for felony OFP. That does not sound like a stale warrant. I get it. It doesn't sound like it, but that you're drawing some inferences, I think. And your colleague on the other side is suggesting maybe it's not as clearly, the contradiction is not as clear as you'd like it to be. I think that Twombly would more or less say that that inference is ridiculous under these circumstances, Judge Gropes. I think that when you're talking about this is the guy that's wanted for felony OFP, and then he tells Lont, then you hear him on body-worn camera saying to Ramsey County, okay, I'll go ahead and arrest him. And the other two officers hear that and start proceeding to effectuate that arrest, I think that that inference is blatantly ridiculous. And I just don't think it's fair. This all goes to the arrest. Where's the clearly established right? Where is one case that they have cited saying that Trooper Lonergan, or for that matter Trooper Seide, behaved in a way that violated a clearly established right? Even if that was, to your question, Judge Gropes, even if Seide, and again, I'm jumping back over it with respect to defending Trooper Seide, even if there was arguable probable cause, that's enough under this circuit's and Supreme Court precedent in order for him to be qualifiably immune from liability. And that's one of the things that the appellant doesn't really understand. That is the purpose of qualified immunity. It's so they don't have to go into discovery and be held into court on this. It is not this little bar that we kind of hit on a 12 v. 6 like in my normal civil cases. It's not that sort of thing. This is the sort of thing saying, we are saying as a society, we are going to stop doing this if it is objectively reasonable what these officers did. And what was objectively reasonable, frankly, we should not be in a courtroom for this testimony because he saved that trooper's life. And he also sustained injuries as a result of this. And to be hailing into this courtroom under these circumstances, I just think it's very wrong, and I see my time is up. Very well. Thank you for your argument. Ms. Veit-Carter, we'll hear from you. Thank you, Your Honors, and may it please the Court, Anna Veit-Carter on behalf of Trooper Seide. The District Court properly dismissed the claims against Trooper Seide because appellant failed to establish either prong of the qualified immunity analysis, let alone both. And I'll just turn immediately to the probable cause question and the call with Ramsey County because there are some additional things that you can see and hear in the video that show that the only reasonable inference to be drawn from the one-sided call that you hear is that they asked him to arrest Trooper Seide. I'm sorry, that they asked him to arrest Mr. Cobb. From Trooper Seide's side of the call, he says at least three times, okay, we'll get him arrested, or words to that effect. He asked several clarifying questions. Where should I bring him? How should I book him? What number should I use? There's not a reasonable inference that he would say all of these things if Ramsey County said we don't want him anymore. And on the point of the timing of the 72 hours, you can also hear on the video that Trooper Seide is speaking through the issues with Trooper Erickson, 72-hour hold, entered on 7-28, expires today, not tomorrow, today. So there's also, I believe that appellant's statement that it was expired by that day is not accurately reflected by the record. Well, just to be fair, I don't think she said she was alleging that it was expired, but that there's an absence of information about the status of the order. That's fair, Your Honor. And the case law is clear that Trooper Seide is allowed to rely on that request from Ramsey County. He does not need to independently establish his own probable cause to effectuate the arrest. And that, of course, is this court's case in Duran v. Eckbold. It's a subtle principle that law enforcement officers may rely on information by others in the law enforcement community so long as that reliance is reasonable. And there's nothing here in the pleadings or the video that suggests that his reliance was unreasonable. Plaintiff's other theory for unreasonable seizure is, of course, the length of the stop. Here, Trooper Seide did exactly what the alert told him to do. The alert said, wanted for felony OFP. If locate, hold subject, and contact Ramsey County. He did that, and it took him about nine minutes to get back, which is not an unreasonable length of time. We've cited a few cases in our brief with more lengthy stops than that where there was no constitutional violation found. On the excessive force claim, of course, with Trooper Seide, this is limited to Trooper Seide using his vehicle to help bring Mr. Cobb's vehicle to a stop. And that is an objectively reasonable standard. And the circumstances of that are clear on the video. Trooper Seide decelerated and bumped Mr. Cobb's back vehicle. He did not ram it. And the circumstances of his actions are important. This was after Mr. Cobb repeatedly refused to get out of the car or turn over his  It was after Mr. Cobb drove away from the scene of the stop with some speed and drove across several lanes of interstate traffic, moving from the right lane to the left lane when there was other traffic present. I think the case law is clear that those actions were also not unreasonable. What would be the reasonableness of hitting the car as opposed to just blocking it? It was stopped, as I recall, at the time. It was moving at a very slow rate of speed, Your Honor, on the left-hand side. You can see. It had not stopped yet? It had not stopped yet. So Trooper Seide hits the back right side of Mr. Cobb's vehicle and Trooper comes around at the front to stop it. Was this question of extending the traffic stop, was that pled and or argued to the district court? It was not clearly pled in the complaint, but it was argued at the motion to dismiss phase. Of course, the second prong is whether or not the rights were clearly established, and appellant has not cited case law supporting either of her claims here. The only case law on unreasonable seizure is that a warrantless arrest unsupported by probable cause violates the Fourth Amendment. As I've discussed, that is not what we have here, but even if it were, that is not sufficient particularity under the case law to demonstrate that a violation was clearly established, and that, of course, is the White v. Pauley matter. And on excessive force, the only case that appellant relies on is a case that is significantly different. It is a case where the plaintiff was restrained when an officer hit her and punched her. Obviously, that's different than using a vehicle to stop a moving vehicle that may be a danger to the public. What's your view on the use of the videos in this context? Does the video have to blatantly contradict something in order for the court to consider it? No. No, Your Honor. You're shaking your head no. What do you think is the basis on which a court may consider a video that's not mentioned in the complaint? This court, there's case law from this court where a body-worn camera or another video of an incident is embraced by the pleadings and available to the court at the motion to dismiss phase. Are you talking about the Ching case? I What case are you referring to? I think that case does address it, and it doesn't I think appellant tries to do too much with that case. It is not just when the videos may contradict the complaint, but it's at any time there is a video of Well, what's the basis? Going back to first principles, what would be the basis for saying that a video is embraced by a complaint? It is a video of the incident that is explained in the complaint. I think in the Ching v. LeMay case, it wasn't even a body cam. It was just a video of an incident in the backyard, and the district court considered that, and it was appropriate for it to do so. So you think the rule should be that if there's a video of any incident that's described in a complaint, then that video is embraced by the complaint and may be considered by a district court? Correct, Your Honor, and I do believe that is what the case law Which case, is there anything other than Ching that you think is helpful on that? I think both Ching and LeMay. In LeMay, this court reviewed the videos and considered them at the motion to dismiss, and it wasn't just because they contradicted the complaint. It was because they showed the incident that the complaint was addressing, and that's LeMay 18F4-283. Yeah, I'm familiar. Unless Your Honors have any further questions, we ask that you affirm. Okay, thank you for your argument. Ms. Wilbanks, we'll hear rebuttal. Very briefly, Your Honors, it is false that we said we were going to ignore the videos. The entire complaint was written by watching the video, and you can see that from looking at how we factually pled it. We made sure to include as much detail as possible. They have failed to show that there was a blatant contradiction, and the Scott v. Harris case is distinguishable in that respect. That was a summary judgment motion for one thing. The other thing is that the plaintiff in that case said, I was not causing a danger to anyone. I was not an immediate threat. When they looked at the video, there had been a very long high-speed chase where numerous cars had been hit and nearly hit, and, you know, that is a blatant contradiction. Questions over interpretations of what a video shows and whether there is an immediate threat is not the sort of blatant contradiction that Scott v. Harris demands. Qualified immunity has to be established on the face of the complaint in order to dispose of a case at the 12 v. 6 stage. There has been no showing that there was a blatant contradiction between the video and what we pled about the video in the complaint. This case was improperly dismissed on a summary judgment standard and not 12 v. 6 and it should proceed to discovery. Ms. Woodbank, one quick question, if I may. In one of the appellee's briefs and today here at argument, there was the assertion that Mr. Cobb reached toward the officer who was about to fire. And I didn't see any response to that in your reply brief. Is that a conceded fact or? It is not actually. The district court judge said that she saw no indication of that in the video and that she was not going to address it. Thank you, Your Honors. If you don't have any further questions for me, I appreciate your accommodations to getting us here today. Very well. Thank you for your argument. Thank you to all counsel. The case is submitted. The court will file a decision in due course.